NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed November 29, 2007

**United States Bankruptcy Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In Re:** | § | |
| | § | |
| **McCOMMAS LFG PROCESSING** | § | **Case No. 07-32219-HDH-11** |
| **PARTNERS, LP,** | § | |
| | § | |
| **McCOMMAS LANDFILL** | § | **Case No. 07-32222-HDH-11** |
| **PARTNERS, LP,** | § | |
| | § | **(Jointly Administered Under** |
| **Debtors** | § | **Case No. 07-32219-HDH-11)** |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT**
**OF FIRST AMENDED JOINT PLAN OF LIQUIDATION, AS MODIFIED,**
**FOR MCCOMMAS LFG PROCESSING PARTNERS, LP AND MCCOMMAS**
**<u>LANDFILL PARTNERS, LP, PROPOSED BY THE CHAPTER 11 TRUSTEE</u>**

On November 15th, 19th, 20th, 21st, 26th and 27th, 2007, the Bankruptcy Court held

hearings (the "<u>Confirmation Hearings</u>")[1] to consider confirmation of the First Amended Joint

Plan of Liquidation, dated as of October 30, 2007 (the "<u>Plan</u>"), as modified, proposed by the

Chapter 11 Trustee (the "<u>Trustee</u>") on behalf of McCommas LFG Processing Partners, LP

("<u>McCommas Processing</u>") and McCommas Landfill Partners, LP ("<u>McCommas Landfill</u>", and

together with McCommas Processing, the "<u>Debtors</u>"). The Bankruptcy Court makes the

---

[1] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan or the First Amended Disclosure Statement in Support of the Plan, as applicable.

following findings of fact and conclusions of law in support of the Order confirming the Plan

(the "Confirmation Order"):

1.      The following record (the "Record") was established to support confirmation of

the Plan:

(a)      All documents identified on the Trustee's Exhibit and Witness List filed on November 15, 2007 [Docket No. 461], all of which were admitted into evidence without objection;

(b)      The testimony at the Confirmation Hearing of (i) William Snyder, (ii) Benjamin Schlesinger, and (iii) Wallace Hall;

(c)      The evidence in respect of the transmittal and service of the solicitation packages, all of which was filed with the Court;

(d)      Evidence regarding tabulation of votes on the Plan, which was admitted into evidence without objection;

(e)      The entire record of the estimation hearings regarding the claims of MMR Group, Inc., MMR Power Solutions, LLC and MMR Constructors, Inc. (collectively, "MMR") and Bluff Power Partners, LP ("Bluff Power"), including all documentary evidence and testimony admitted into the record, briefs and papers filed, and arguments of counsel in connection therewith, all of which was incorporated into the Record at the Confirmation Hearing;

(f)      The entire record of the Debtors' chapter 11 cases (the "Chapter 11 Cases") and the docket maintained by the Clerk of the Bankruptcy Court and/or its duly appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and evidence and argument made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of these Chapter 11 Cases, as to all of which the Court took judicial notice at the Confirmation Hearing;

(g)      The statements and argument of counsel on the record at the Confirmation Hearing, and all papers and pleadings filed with the Bankruptcy Court in support of, in opposition to, or otherwise in connection with, confirmation of the Plan; and

(h)      All exhibits of SunTrust Bank and Bluff Power admitted into evidence.

2.      The evidence that was admitted into the Record in support of confirmation of the

Plan and all related matters demonstrates, by a clear preponderance of the evidence, that the Plan

should be confirmed.

3.     The Plan satisfies all applicable requirements under the Bankruptcy Code and Bankruptcy Rules and is in the best interest of the Debtors and their Estates, and supported by the Record, and therefore should be confirmed.  All objections to confirmation of the Plan, which were not withdrawn or resolved by agreement at or prior to the Confirmation Hearing should be overruled, or are otherwise disposed of, as set forth herein and in the Confirmation Order.

4.     The Record amply supports confirmation of the Plan and the Bankruptcy Court will issue an order confirming the Plan.

5.     The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by the Bankruptcy Court at the Confirmation Hearings are hereby incorporated herein for all purposes to the extent not inconsistent herewith.[2]  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

## A.     Jurisdiction and Venue

6.     The Bankruptcy Court has subject matter jurisdiction to confirm the Plan pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(A),(L), (N) and(O).

---

[2]     A true and correct copy of the Bankruptcy Court's findings of fact and conclusions of law announced at the November 27, 2007 Confirmation Hearing are attached hereto as Exhibit "1" and are incorporated herein by reference as if fully set forth herein.

**B.      Background**

7.      On May 7, 2007, the general partner of the Debtors caused the Debtors to file voluntary petitions under chapter 11 of the Bankruptcy Code.

8.      On May 14, 2007, the Bankruptcy Court entered an Order authorizing the United States Trustee to appoint a single chapter 11 Trustee for each of the Debtors' bankruptcy estates. This order also set forth a protocol (the "Trustee Protocol"), agreed to by and among the Debtors' general partner and Bluff Power, for the person selected as trustee to follow after his or her appointment.   On May 21, 2007, the Bankruptcy Court entered an Order approving the appointment of the Trustee.   Since then the Trustee has continued to operate the Debtors' businesses and sought potential purchasers for substantially all of the Debtors' assets pursuant to the Trustee Protocol.

**C.      The Disclosure Statement**

9.      On October 30, 2007, the Trustee filed his First Amended Disclosure Statement in Support of the First Amended Plan of Liquidation for McCommas LFG Processing Partners, LP and McCommas Landfill Partners, LP (the "Disclosure Statement") [Docket No. 404].

10.      On November 1, 2007, the Bankruptcy Court issued an order (the "Disclosure Statement Order") [Docket No. 415] approving the Disclosure Statement in accordance with section 1125 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018, and establishing deadlines for confirmation of the Plan.

**D.      Notice**

11.      As set forth in the Record, the Trustee complied with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules and all other applicable laws in connection with the solicitation of votes on Plan and the provision of notice of the dates of the Confirmation Hearings and the Tuesday, November 13, 2007 (by 4:00 p.m. (Central Time)) deadline for filing

and serving objections to confirmation and for voting on the Plan and all other relevant deadlines related to the Plan. As such, the notice provided with respect to all matters relating to the solicitation of votes on, and the confirmation of, the Plan was adequate and proper and satisfied the requirements of due process with respect to all creditors, equity holders and parties in interest who were provided actual or constructive notice.

**E. Modifications**

12. The First Modification to the Plan filed with the Court on November 19, 2007 and the Second Modification to the Plan filed with the Court on November 26, 2007 (collectively the "Modifications") comply with section 1127 of the Bankruptcy Code. As provided by section 1127(a) of the Bankruptcy Code, the Trustee was authorized to propose the Modifications, and the Plan satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code. As provided by section 1127(c) of the Bankruptcy Code, the Modifications comply with section 1125 of the Bankruptcy Code. The Modifications will not adversely change the treatment of any Claims or Equity Interests who have not accepted the Plan. Pursuant to section 1127(d) of the Bankruptcy Code and Bankruptcy Rule 3019, all acceptances of the Plan prior to such Modifications are deemed acceptances of the Plan, as modified by the Modifications.

**F. Voting**

13. As set forth in the Record, each impaired Class of Claims and Equity Interests either (a) voted to accept the Plan under section 1126 of the Bankruptcy Code and for purposes of section 1129(a)(8)(A) of the Bankruptcy Code, (b) is not impaired under section 1124 of the Bankruptcy Code and for the purposes of section 1129(a)(8)(B) of the Bankruptcy Code, or (c) is impaired pursuant to section 1124 of the Bankruptcy Code and voted to reject the Plan under section 1126 of the Bankruptcy Code, but is receiving treatment that satisfies the applicable requirements of section 1129(b) of the Bankruptcy Code. Voting on the Plan and treatment

thereunder, including any votes changed pursuant to settlements announced on the Record and all treatment changes as reflected in the Modifications are as reflected on the Voting Summary Report attached hereto as Exhibit "2".

## G.     Implementation of the Plan

14.     Article III of the Plan provides the means for implementing the Plan.   The provisions of Article III of the Plan and the transactions and transfers to be implemented pursuant thereto (the "Plan Transactions"), are consistent with and permissible under section 1123(a)(5) of the Bankruptcy Code and are consistent with the interests of creditors, equity holders and public policy.

15.     Each of the Plan Transactions is necessary and appropriate in order to facilitate and ensure the feasibility of the Plan, and maximize value for the Debtors, their estates, creditors, equity holders and other parties-in-interest.   Approval of the Plan Transactions is within the authority of the Bankruptcy Court pursuant to section 1123(a) of the Bankruptcy Code and otherwise in furtherance of the general principles of the Bankruptcy Code.   The Plan Transactions represent the exercise of the sound business judgment of the Trustee, will benefit the Debtors' Estates and are proposed in good faith.

16.     The entry of the Confirmation Order shall constitute authorization for the Trustee and the Liquidating Trustee to take or cause to be taken all partnership actions necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on and after the Effective Date and all such actions taken or caused to be taken consistent with the terms of the Confirmation Order and the Plan shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation.

**H.    Approval of Settlement Agreements**

17.    Prior to the Confirmation Hearing, the Trustee filed Motions to approve the following settlement agreements: (i) Compromise and Settlement Agreement, entered into as of November 15, 2007 (the "SunTrust Settlement Agreement"), by and among the Trustee, Bell County Industrial Development Corporation ("Bell County IDC"), and SunTrust Bank, solely in its capacity as Trustee ("SunTrust") under the Indenture (as defined in the SunTrust Settlement Agreement) [Docket # 468]; (ii) Acknowledgment Agreement, entered into as of November 19, 2007 (the "Camco Settlement Agreement"), by and among the Trustee, the City of Dallas and Camco International, Inc. ("Camco") [Docket # 504]; (iii) Compromise and Settlement Agreement, entered into as of November 20, 2007 (the "City of Dallas Settlement Agreement"), by and among the Trustee and the City of Dallas   [Docket # 505]; and (iv) Settlement Agreement, entered into as of November 15, 2007 (the "SCS/Weldon Settlement Agreement"), by and among the Debtors, Stearns, Conrad and Schmidt Consulting Engineers, Inc., and Weldon Contractors, Ltd. [Docket # 476].   On November 26, 2007, the Trustee filed a Motion to Approve a Compromise and Settlement Agreement, entered into as of November 26, 2007 (the "MMR Settlement Agreement"), with MMR [Docket # 519].    The SunTrust Settlement Agreement, the Camco Settlement Agreement, the City of Dallas Settlement Agreement, the SCS/Weldon Settlement Agreement and the MMR Settlement Agreement are collectively referred to as the "Settlement Agreements").[3]

18.    Each of the Settlement Agreements listed in paragraph 17 above were incorporated into the Plan pursuant to a Plan Modification.   The Court finds that under the

---

[3]    True and correct copies of the Settlement Agreements are attached hereto as Exhibits "3", "4", "5", "6" and "7" respectively and, by this reference, incorporated herein for all purposes.

circumstances, notice of the Settlement Agreements was provided to all parties entitled to notice, is adequate, appropriate, reasonable and proper for all purposes and is hereby approved.

19.     The Court has considered the following with respect to the Settlement Agreements set forth in paragraph 17 above: (1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) the complexity and likely duration of the litigation involved and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise.   After giving due consideration to these factors, the Court finds that each of the Settlement Agreements listed in paragraph 17 above is fair and reasonable to, and is in the best interest of the Debtors, their estates and creditors (including any and all holders of one or more Bonds) and all other parties in interest in these Cases.

20.     Each of the Settlement Agreements listed in paragraph 17 above are hereby approved in their entirety, including any and all releases set forth therein, and such Settlement Agreements are incorporated into the Plan, the findings and conclusions set forth herein, and the Confirmation Order for all purposes.

21.     The Trustee and the Liquidating Trustee are authorized and directed to make any and all payments required under the Settlement Agreements set forth in paragraph 17 above.

## I.     Sale of Assets to Dallas Clean Energy, LLC

### (a)     The Bid Procedures Order

22.     The Court approved the Bid Procedures on October 2, 2007 (the "Bid Procedures Order") [Docket No. 325].   The Court subsequently modified the Bid Procedures Order on November 1, 2007 [Docket No. 414].

### (b)     The Sale Motion

23.     On November 12, 2007, the Trustee filed a motion (the "Sale Motion"), pursuant to sections 105(a), 363, 365 and 1146 of the Bankruptcy Code, and Rules 2002, 6004, 6006, 9007 and 9014 of the Bankruptcy Rules, seeking entry of an order: (A) approving the APA by and between the Debtors and Camco, or its assignee, and such other agreements to be entered into and among the parties as contemplated therein; (B) authorizing (i) the termination of the Lease Agreement, dated December 1, 1997, between Bell County IDC, as lessor, and McCommas Processing, as lessee (as amended, the "Bell County Lease"), on the Closing Date, and the exercise of the option to purchase the Project[4] under Article 11.1 of the Bell County Lease (the "Purchase Option"), and (ii) the sale (the "Sale") of substantially all of the Debtors' assets, including the Project (the "Transferred Assets"), to Camco, or its assignee, free and clear of any and all liens (including, without limitation, mechanics', materialmens' and other consensual and non-consensual liens and statutory liens), mortgages, pledges, claims, security interests, title defects, charges, conditions, rights of first refusal, offsets, contracts, recoupment, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, claims (as that term is defined in the Bankruptcy Code), rights of another, or other restrictions or encumbrances, legal or equitable, or of any other kind whatsoever, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed (each individually an "Encumbrance," collectively, the "Encumbrances"), other than the Assumed Liabilities under the APA; (C) the assumption by the Debtors and the assignment to Camco, or its assignee, of the leases and executory contracts set forth on Exhibit "A(1)" to the Sale Motion (the "Assigned Contracts"); and (D) granting certain related relief.

---

[4]     "Project" is defined in the Bell County Lease as "the leasehold interest in the Site, the Facilities and the Equipment, as they may at any time exist, and all other property and rights described or referred to or intended so to be in the demising clauses hereof or in any way subject to the demise hereof."

24.     The Sale Motion is incorporated in the Plan, these Finding and Conclusions and the Confirmation Order for all purposes.

**(c)     Notice of the Sale, Auction and the Cure Amounts**

25.     Actual written notice of the Confirmation Hearings, the Auction, the Sale Motion, the Sale and the assumption and assignment of the Assigned Contracts, and a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to: (i) the Office of the United States Trustee; (ii) counsel for the Debtors' equity holders; (iii) any entities known to have expressed, in writing, an interest in an acquisition transaction regarding the Debtors' assets; (iv) all entities known to have, or to have asserted, any lien, claim, encumbrance or other property interest in or upon any of the Debtors' assets; (v) all taxing authorities for those jurisdictions in which the Debtors' assets are located; (vi) the District Director of the Internal Revenue Service for the applicable IRS districts; (vii) all counterparties to the Debtors' unexpired leases and executory contracts; (viii) all parties that filed a notice of appearance and request for service of papers in these bankruptcy cases; (ix) all relevant state and federal environmental authorities; and (x) all known creditors of the Debtors.

26.     The Trustee provided adequate and proper notice of the Sale Motion, the Sale, the time and place of the proposed Auction, and the time and place of the Confirmation Hearings.

27.     The Trustee served notice of the cure amounts listed on Exhibit "A(1)" to the Sale Motion (the "Cure Notice") upon each non-debtor counterparty to an Assigned Contract that the Trustee seeks to assume and assign to Camco, or its assignee, on the Closing Date.  The service of such Cure Notice was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of establishing a Cure Amount for the respective Assigned

Contract. Non-debtor counterparties to the Assigned Contracts have had an opportunity to object to the Cure Amount set forth in the Cure Notice.

28. As evidenced by the certificates of service previously filed with this Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction, the Confirmation Hearings, and the Sale has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014. The Trustee also has complied with all obligations to provide notice of the Sale Motion, the Auction, the Confirmation Hearings, and the Sale required by the Bid Procedures Order. The foregoing notice described in paragraphs 25 through 27 were adequate, sufficient and proper under the circumstances, and no other or further notice of the Sale Motion, the Auction, the Confirmation Hearings, the Sale or the assumption and assignment of the Assigned Contracts is required.

29. The disclosures made by the Debtors and the Trustee concerning the APA, the Sale, and the Confirmation Hearings were good, complete and adequate.

**(d)    Extension of Closing Deadline**

30. Pursuant to Section III(A)(7) of the Plan and the APA, the sale of the Transferred Assets may be terminated by Camco if not consummated on or before November 29, 2007. The deadline to close under Section III(A)(7) of the Plan and the APA is hereby extended to November 30, 2007.

**(e)    Designation of Dallas Clean Energy, LLC as Buyer Under the APA**

31. Pursuant to the APA, the Trustee agreed to sell the Transferred Assets to Camco, or its assignee. Camco has designated Dallas Clean Energy, LLC ("Dallas Clean Energy") as its assignee under the APA. Therefore, as assignee under the APA, Dallas Clean Energy is the

beneficiary of all Camco's rights and privileges under the APA, including without limitation the right to purchase the Transferred Assets from the Trustee.

### (f)    Good Faith of Camco and Dallas Clean Energy

32.    Neither Camco nor Dallas Clean Energy is an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

33.    Dallas Clean Energy is purchasing the Transferred Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that: (a) Camco and Dallas Clean Energy, as its assignee, recognized that the Debtors and the Trustee were free to deal with any other party interested in acquiring the Transferred Assets; (b) Camco and Dallas Clean Energy, as its assignee, complied with the provisions in the Bid Procedures Order; (c) Camco and Dallas Clean Energy, as its assignee, agreed to subject its bid to the competitive bidding procedures set forth in the Bid Procedures Order; (d) all payments to be made by Camco and/or Dallas Clean Energy, as its assignee, and other agreements or arrangements entered into by Camco and/or Dallas Clean Energy, as its assignee, in connection with the Sale have been disclosed; (e) Camco and Dallas Clean Energy, as its assignee, have not violated section 363(n) of the Bankruptcy Code by any action or inaction; (f) no common identity of directors or controlling stockholders exists between Camco and Dallas Clean Energy, on the one hand, and the Debtors and the Trustee, on the other hand; and (g) the negotiation and execution of the APA and any other agreements or instruments related thereto was at arm's-length and in good faith.

### (g)    Highest and Best Offer

34.     The Trustee conducted an auction process in accordance with, and has otherwise complied in all respects with, the Bid Procedures Order. The Auction process set forth in the Bid Procedures Order afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Transferred Assets.  The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Transferred Assets.

35.     The APA constitutes the highest and best offer for the Transferred Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.  The Trustee's determination that the APA constitutes the highest and best offer for the Transferred Assets constitutes a valid and sound exercise of the Debtors' and the Trustee's business judgment.

36.     The APA represents a fair and reasonable offer to purchase the Transferred Assets under the circumstances of the Debtors' Chapter 11 Cases.  No other person or entity or group of entities has offered to purchase the Transferred Assets for greater economic value to the Debtors' estates than Camco and/or Dallas Clean Energy.

37.     Approval of the Sale Motion, the APA, and the SunTrust Settlement Agreement, and the consummation of the transactions contemplated by each of the foregoing, are in the best interest of the Debtors, their creditors (including any and all holders of one or more Bonds), their estates and other parties in interest.

    **(h)     No Fraudulent Transfer**

38.     The consideration provided by Camco and/or Dallas Clean Energy pursuant to the APA is fair and adequate and constitutes reasonably equivalent value and fair consideration

under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

### (i)     Validity of Transfer

39.     The Trustee and the Liquidating Trustee have full power and authority to execute and deliver the APA and all other documents contemplated thereby, and no further consents or approvals are required for the Debtors and the Trustee to consummate the transactions contemplated by the APA, except as otherwise set forth in the APA.

40.     The transfer of each of the Transferred Assets to Dallas Clean Energy will be as of the Closing Date a legal, valid, and effective transfer of such assets, and vests or will vest Dallas Clean Energy with all right, title, and interest of the Debtors to the Transferred Assets free and clear of all Encumbrances accruing, arising or relating to any time prior to the Closing Date, except for any Assumed Liabilities under the APA.

### (j)     Section 363(f) Is Satisfied

41.     Subject to the terms of the SunTrust Settlement Agreement, the Debtors and the Trustee may sell the Transferred Assets to Dallas Clean Energy free and clear of all Encumbrances against the Debtors, their estates or any of the Transferred Assets (except for the Assumed Liabilities under the APA) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  With respect to any and all entities asserting an Encumbrance, including, without limitation, any options, pledges, security interests, claims, equities, reservations, third party rights, voting trusts or similar arrangements, charges or other encumbrances or restrictions on or conditions to transfer or assignment of any kind (including, without limitation to the generality of the foregoing, restrictions or conditions on or to the transfer, assignment or renewal of licenses, permits registrations and authorizations or

approvals of or with respect to governmental units and instrumentalities), whether direct or indirect, absolute or contingent, matured or unmatured, liquidated or unliquidated on or against the Transferred Assets either (i) such entity has consented to the sale and transfer, license and assignment, as applicable, free and clear of its Encumbrance, with such Encumbrance to attach to the proceeds of such sale and transfer, license and assignment, as applicable, respectively, (ii) applicable non-bankruptcy law permits the sale of the assets free and clear of such Encumbrance, (iii) such Encumbrance is in bona fide dispute, or (iv) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Encumbrance, so that the conditions of section 363(f) of the Bankruptcy Code have been met.

42.     Subject to the terms of the SunTrust Settlement Agreement, those holders of Encumbrances against the Debtors, their estates or any of the Transferred Assets who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such Encumbrances who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Encumbrances, if any, in each instance against the Debtors, their estates or any of the Transferred Assets, attach to the cash proceeds of the Sale ultimately attributable to the Transferred Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

**(k)     Option to Purchase Project Pursuant to Bell County Lease**

43.     The Debtors and the Trustee have the authority to acquire the Project from Bell County IDC and SunTrust and transfer the Project to Dallas Clean Energy. Pursuant to section

11.1 of the Bell County Lease, the Debtors, upon the termination of the Bell County Lease, however such termination may occur, have the right, upon ten (10) days prior written notice to Bell County to purchase, or cause to be purchased by another person or entity, the Project for a price equal to the fair market value of the Project as of the date of such purchase as determined by an independent appraiser.

44.     The termination of the Bell County Lease and the acquisition of the Project by Dallas Clean Energy pursuant to the terms of this Order are integral to the APA and are in the best interest of the Debtors and their estates, creditors (including any and all holders of one or more Bonds) and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Trustee.

45.     The Trustee gave ten (10) days prior written notice to Bell County IDC and SunTrust of its intent to purchase, or cause to be purchased by another person or entity, the Project for a price equal to the fair market value of the Project as of the date of such purchase as determined by an independent appraiser.  Such notice is adequate and proper pursuant to the terms of the Bell County Lease.

46.     Rosen Systems, Inc. ("Rosen"), an independent appraiser retained pursuant to order of the Bankruptcy Court, is an "Independent Appraiser" as that term is defined in section 11.1 of the Bell County Lease.  Rosen has valued the Project at approximately $715,000.00, which is fair market value for the Project.

47.     Pursuant to the SunTrust Settlement Agreement, the purchase-option payment owed by McCommas Processing under the Bell County Lease has been waived by SunTrust and Bell County IDC.

**(l)     Assumption and Assignment of the Assigned Contracts**

48. The assumption and assignment of the Assigned Contracts pursuant to the terms of this Order is integral to the APA and is in the best interest of the Debtors and their estates, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Trustee.

49. The respective amounts set forth on Exhibit "A(1)" to the Sale Motion are the sole amounts necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure all monetary defaults and pay all actual pecuniary losses under the Assigned Contracts.

50. The Trustee and the Liquidating Trustee (directly or through Camco and/or Dallas Clean Energy), in accordance with the APA, have (i) cured and/or provided adequate assurance of cure of any default existing prior to the Closing Date under any of the Assigned Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; and (ii) provided compensation or adequate assurance of compensation to any party for actual pecuniary loss to such party resulting from a default prior to the Closing Date under any of the Assigned Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.

51. Dallas Clean Energy has provided adequate assurance of its future performance under the relevant Assigned Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

**(m)     Compelling Circumstances for an Immediate Sale**

52. To maximize the value of the Transferred Assets and preserve the viability of the Debtors' business to which the Transferred Assets relate, it is essential that the Sale of the Transferred Assets occur within the time constraints set forth in the APA and the Bid Procedures Order. Time is of the essence in consummating the Sale.

53.     The consummation of the transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f), and all of the applicable requirements of such sections have been complied with in respect of the transaction.

**(n)     No Brokers**

54.     There are no brokers involved in consummating the Sale and no brokers' commissions are due.

**J.     Creation of the Trust**

55.     The McCommas Liquidating Trust (the "Trust") is approved and the Trustee is hereby authorized to execute the McCommas Liquidating Trust Agreement (the "Trust Agreement").

56.     The creation of the Trust is reasonable and appropriate and will, subject to the terms of the SunTrust Settlement Agreement, be used to hold the proceeds of the sale received from Dallas Clean Energy, make timely and appropriate distributions to Allowed Claims and Allowed Equity Interests, to hold and manage all Litigation Claims, and otherwise carry out the provisions of the Plan.  The transactions to be consummated in connection with the transfer of assets to the Trust as set forth in the Plan are in the best interests of the Debtors, their Estates and all other parties in interest, including all creditors and equity holders, meet the requirements of the Bankruptcy Code and Bankruptcy Rules, and should be approved.

57.     The Trust will be administered by a trustee approved by the Bankruptcy Court (the "Liquidating Trustee").  Pursuant to the terms of the Trust Agreement, William Snyder is appointed as the initial Liquidating Trustee, and Dan Lain is appointed as his replacement.

**K.      Releases, Exculpations and Injunctions**

58.      The Plan provides for various releases, exculpations and injunctions pursuant to Sections V(C), VIII(L) and VIII(N) thereof.

59.      The releases, exculpations and injunctions, as modified and limited by the Confirmation Order, provided in the Plan (a) are within the jurisdiction of the Bankruptcy Court under 28 U.S.C. § 1334; (b) are integral elements of the transactions incorporated into the Plan; (c) confer material benefit on, and are in the best interests of, the Debtors, their Estates and their creditors; (d) are important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors; (e) to the extent they impact the Causes of Action against non-Debtors, only do so to the extent such Causes of Action are inextricably interwoven with Causes of Action against the Debtors; and (f) are consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

**L.      Executory Contracts and Unexpired Leases**

60.      All Contracts and Leases not assumed and assigned to Dallas Clean Energy shall be deemed rejected as of the later of the Effective Date or the Closing Date.

61.      The Trustee has exercised reasonable business judgment in determining whether to reject or assume and assign each of the Debtors' executory contracts and unexpired leases under the terms of the Plan and the Confirmation Order.  Each rejection or assumption and assignment of an executory contract or unexpired lease pursuant to Section V(A) of the Plan will be legal, valid and binding upon the Trustee, the applicable Debtor, and all non-Debtor parties to such executory contract or unexpired lease, as applicable, all to the same extent as if such rejection or assumption and assignment had been effectuated pursuant to an appropriate order of the Bankruptcy Court entered before the Confirmation Date under section 365 of the Bankruptcy

Code. Each of the executory contracts and unexpired leases to be rejected or assumed and assigned is deemed to be an executory contract or an unexpired lease, as applicable.

62. The Plan constitutes a motion to reject all of the Debtors' executory contracts and unexpired leases, except as otherwise provided in Section III(A)(4) of the Plan, and as set forth in the Confirmation Order. Each executory contract or unexpired lease to be rejected pursuant to the Plan is burdensome and the rejection thereof is in the best interests of the Estates.

63. The Plan constitutes a motion to assume and assign, as set forth in Section III(A)(4) of the Plan, and as set forth in the Confirmation Order, the Assigned Contracts. Except as otherwise provided in a separate order of the Bankruptcy Court, any non-Debtor party to an Assigned Contract was required to object to such assumption and assignment or to the cure amounts proposed by the Debtors in connection therewith by no later than November 13, 2007.

64. Upon the entry of the Confirmation Order, (a) all of the requirements of sections 365(b) and (f) will have been satisfied with respect to each Assigned Contract for which no timely objection was filed; (b) all rights to object to the assumption and assignment of any such Assigned Contract will have been waived; (c) except as the Bankruptcy Court may hereafter determine is necessary and appropriate to effect the purpose of the Bankruptcy Code and equity, all rights to object to the cure amounts with respect to any such Assigned Contracts will have been waived; and (d) the assumption and assignment of such Assigned Contracts will have been approved.

65. If the reasonable consent of any counterparty to an executory contract or unexpired lease of the Debtors is required in connection with the transfer of such contract or lease to Dallas Clean Energy under the Plan, (a) the refusal to grant such consent *is per se* unreasonable and (b) such consent will be and is deemed to have been given.

**M.    Bankruptcy Rules 3020(e), 6004(g) and 6006(d)**

66.    Good cause exists for waiving and eliminating the stay of the Confirmation Order set forth in Bankruptcy Rule 3020(e).  In particular, the Plan represents a fair and equitable compromise by and among the major parties in interest and should be consummated as expeditiously as possible.  If the stay is not waived and eliminated, the ability of the Trustee to consummate the sale to Dallas Clean Energy may be lost or materially delayed.

67.    Good cause exists for waiving and eliminating the stay of the sale of substantially all of the Debtors' assets as set forth in Bankruptcy Rule 6004(g) and approving the assumption and assignment of the Assumed Leases as set forth in Bankruptcy Rule 6006(d).  If the stay provided for in Bankruptcy Rules 6004(g) and 6006(d) is not waived and eliminated, the ability for the Trustee to consummate the sale to Dallas Clean Energy may be lost or materially delayed.

**N.    Certain Tax Consequences Under the Plan**

68.    The principal purpose of the Plan, as proposed and confirmed, and of each transactions set forth therein, is not the avoidance or evasion of Federal income tax within the meaning of Section 269 of the Internal Revenue Code and the Treasury Regulations promulgated thereunder, and the Plan therefore complies with section 1129(d) of the Bankruptcy Code.

**O.    The Plan Complies with Section 1129 of the Bankruptcy Code**

69.    To obtain confirmation of the Plan, the Trustee must demonstrate that the Plan satisfies the provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence.  *See Heartland Fed. Say. & Loan Assoc. v. Briscoe Enters., Ltd., II (In re Briscoe Enters., Ltd., II),* 994 F.2d 1160,1165 (5th Cir. 1993), *cert, denied,* 510 U.S. 992 (1993); *In re MCorp Fin, Inc.,* 137 B.R. 219, 225 (Bankr. S.D. Tex. 1992); *In re Arnold,* 80 B.R. 806, 807 (Bankr. M.D. La. 1987); *see also In re JT Thorpe Co.,* 308 B.R. 782,785 (Bankr. S.D. Tex. 2003), *qff'd,* 2004 WL 720263 (S.D. Tex. Mar. 3, 2004); *In re Kent Terminal Corp.,* 166 B.R.

555,561 (Bankr. S.D.N.Y. 1994); 7 *Collier On Bankruptcy* 1129.02[4], at 1129-22 (15th rev. ed. 2005).

70.     As demonstrated by the Record, the Plan complies with all relevant sections of the Bankruptcy Code, Bankruptcy Rules and applicable non-bankruptcy law relating to the confirmation of the Plan, in particular, the Plan complies with all of the requirements of section 1129 of the Bankruptcy Code.

71.     The Trustee has satisfied section 1121 of the Bankruptcy Code in that the Trustee has standing to file a plan.

**P.      The Plan Complies with Section 1129(a)(l) of the Bankruptcy Code**

72.     Pursuant to section 1129(a)(l) of the Bankruptcy Code, a plan of reorganization must "compl[y] with the applicable provisions of [the Bankruptcy Code]."  11 U.S.C. § 1129(a)(l).  The legislative history of section 1129(a)(l) of the Bankruptcy Code indicates that a principal objective of this provision is to assure compliance with the sections of the Bankruptcy Code governing classification of claims and interests and the contents of a plan of reorganization.  *See* S. Rep. No. 95-989, at 126 (1978); H.R. Rep. No. 95-595, at 412 (1977); *see also J T Thorpe,* 308 B.R. at 785; *In re Gen. Homes Corp.,* 134 B.R. 853, 861 (Bankr. S.D. Tex. 1991).  As demonstrated below and in the findings contained herein, the Plan complies fully with the requirements of sections 1122 and 1123 of the Bankruptcy Code, as well as the other applicable provisions of the Bankruptcy Code.

73.     Under section 1122 of the Bankruptcy Code, a plan may provide for multiple classes of claims or interests so long as each claim or interest within a class is substantially similar to other claims or interests in that class.  Significantly, a plan proponent is afforded significant flexibility in classifying claims under section 1122(a) of the Bankruptcy Code provided there is a reasonable basis for the classification scheme and all claims within a

particular class are substantially similar. *See Phoenix Mut. Life Ins. Co.* v. *Greystone III Joint Venture (In re Greystone III Joint Venture),* 995 F.2d 1274,1278 (5th Cir. 1991), *cert. denied,* 506 U.S. 821 (1992); *Aetna Cas. & Sur. Co.* v. *Clerk, Bankr S.D.N.Y. (In re Chateaugay Corp.),* 89 F.3d 942, 949 (2d Cir. 1996); *In re Simmons,* 288 B.R. 737, 743 n.11 (Bankr. N.D. Tex. 2003); *In re Sentry Operating Co. of Tex., Inc ,* 264 B.R. 850, 860 (Bankr. S.D. Tex. 2001); *In re Drexel Burnham Lambert Group, Inc.,* 138 B.R. 723,757 (Bankr. S.D.N.Y. 1992); *In re Eagle Bus Mfg., Inc,* 134 B.R. 584, 596 (Bankr. S.D. Tex. 1991), *aff'd,* 158 B.R. 421 (S.D. Tex. 1993).

74.     Section 1122 of the Bankruptcy Code does not require that all substantially similar claims be placed in the same class. *In re Meadow Glen, Ltd.,* 87 B.R. 421,424 (Bankr. W.D. Tex. 1988). Decisions interpreting section 1122(a) generally uphold separate classification of different groups of unsecured claims when a reasonable basis exists for the classification. *See Greystone III,* 995 F.2d at 1278; *see also Sentry Operating,* 264 B.R. at 860; 7 *Collier on Bankruptcy* § 1122.03[4][a], at 1122-11 (15th rev. ed. 2005). The Bankruptcy Code only prohibits the identical classification of dissimilar claims and does not require the same classification for claims sharing some attributes. *See Chateaugay,* 155 B.R. at 630; *In re 499 W. Warren St Assocs., Ltd. P'ship,* 151 B.R. 307, 312 (Bankr. N.D.N.Y. 1992). Classification of substantially similar claims in different classes is permitted for purposes of reorganization only and for reasons independent of debtor's motivation to secure the vote of an impaired, assenting class of claims; similar claims may not be classified differently to gerrymander affirmative votes on the reorganization plan. *Greystone III,* 995 F.2d at 1278-79.

75.     The Plan's classifications conform to the statute and separately classify claims based on valid business and legal reasons. The Trustee's classification has a rational basis because it is based on the respective legal rights of each holder of a Claim against or Equity

Interest in the applicable Debtor's Estate and was not proposed to create a consenting impaired class and, thereby, manipulate class voting.

76. Every chapter 11 plan must comply with the requirements set forth in section 1123(a) of the Bankruptcy Code. The Plan complies fully with each such requirement:

(i) Under section 1123(a)(l), a plan must "designate, subject to section 1122 of this title, classes of claims, other than claims of a kind specified in section 507(a)(l), 507(a)(2), or 507(a)(8) of this title, and classes of interest." Article II of the Plan designates classes of Claims and Equity Interests that require classification.

(ii) Under section 1123(a)(2), a plan must "specify any class of claims or interests that is not impaired." Article VI(A) of the Plan specifies which classes of Claims and Equity Interests are not impaired under the Plan.

(iii) Under section 1123(a)(3), a plan must "specify the treatment of any class of claims or interests that is impaired." Article II(C) of the Plan specifies the treatment of classes and interests under the Plan. Article VI(A) of the Plan specifies which classes of Claims and Equity Interests are impaired under the Plan.

(iv) Under section 1123(a)(4), a plan must "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." As reflected in the treatment set forth in Article II(C) of the Plan, the treatment of each of the Claims and Equity Interests in each particular class is the same as the treatment of each of the other

Claims or Equity Interests in such class or the holder of a particular claim or interest has agreed to a less favorable treatment of such particular claim or interest; provided, however, to the extent any claimant received any better treatment than that described by the Plan for its class on the basis of the standards for compromise and settlement, the Bankruptcy Court does not here find that, to the extent of such better treatment, it should not properly be made available to other members of the class.

(v)  Under section 1123(a)(5), a plan must "provide adequate means for the plan's implementation." Section III of the Plan provides adequate means for implementation of the Plan.

(vi)  Under section 1123(a)(6), a plan must "provide for the inclusion in the charter of the debtor, if the debtor is a corporation..., of a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among such classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends." As the Debtors are not corporations, section 1123(a)(6) is inapplicable.

(vii)  Under section 1123(a)(7), a plan must "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer,

director, or trustee under the plan and any successor to such officer, director, or trustee." Section III(B)(2) of the Plan provides for the selection of the initial Liquidating Trustee. The Plan does not provide for the selection of any officer or director of the Debtors.

(viii) Under section 1123(a)(8), where a debtor is an individual, a plan must provide for the payment to creditors under the plan of all or such portion of earnings from personal services performed by the debtor after the commencement of the case or other future income of the debtor as is necessary for the execution of the plan. The debtor is not an individual. Therefore, the provisions of section 1123(a)(8) of the Bankruptcy Code are inapplicable and thus satisfied.

77. The Plan provides for the assumption and assignment and rejection of executory contracts and unexpired leases of the Debtors. Under section 365 of the Bankruptcy Code, a debtor may assume an executory contract or unexpired lease if (a) outstanding defaults under the contract or lease have been cured under section 365(b)(l) of the Bankruptcy Code, and (b) the debtor's decision to assume such executory contract or unexpired lease is supported by valid business justifications. Courts apply the "business judgment test," which requires a showing that the proposed course of action will be advantageous to the estate and the decision be based on sound business judgment. *Lubrizol Enters., Inc.* v. *Richmond Metal Finishers, Inc.,* 756 F.2d 1043, 1046-47 (4th Cir. 1985) ("The issue ... is whether the decision of the debtor that rejection will be advantageous is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice."), *cert, denied,* 475 U.S. 1057 (1986); *In re Constant Care Cmty. Health Or., Inc.,* 99 B.R. 697, 702 (Bankr. D. Md. 1989) (same); *Eagle*

*Bus,* 134 B.R. at 597 (confirming plan in which decisions regarding the assumption or rejection of executory contracts and unexpired leases were based on the debtors' sound business judgment and were in the best interests of the estate). In the absence of a showing of bad faith or an abuse of business discretion, the debtor's business judgment will not be altered. *NLRB* v. *Bildisco & Bildisco (In re Bildisco),* 682 F.2d 72, 79 (3d Cir. 1982), *aff'd,* 465 U.S. 513 (1984); *Lubrizol Enters.,* 756 F.2d at 1047. "Transposed to the bankruptcy context, the [business judgment] rule as applied to a bankrupt's decision to reject an executory contract because of perceived business advantage requires that the decision be accepted by courts unless it is shown that the bankrupt's decision was one taken in bad faith or in gross abuse of the bankrupt's retained business discretion." *Id*.

78. The Trustee's decisions pursuant to the Plan regarding the rejection and assumption and assignment of executory contracts and unexpired leases are based on sound business judgment and are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, holders of Claims and Equity Interests, and other parties in interest in the Debtors' Chapter 11 Cases. *See NLRB* v. *Bildisco & Bildisco,* 465 U.S. 513,523 (1984); *Lubrizol Enters.,* 756 F.2d at 1047. Section V(B) of the Plan states the means by which all monetary defaults under each executory contract and unexpired lease is to be satisfied pursuant to section 365 of the Bankruptcy Code. All Cure Payments which may be required by Section 365(b)(1) of the Bankruptcy Code under any executory contract or unexpired lease that is assumed under the Plan shall be made by the Liquidating Trustee from the Debtor Bond Proceeds and Other Proceeds. Accordingly, the requirements of sections 1123(b)(2) and 365 of the Bankruptcy Code have been satisfied.

**Q. The Plan Complies with Section 1129(a)(2) of the Bankruptcy Code**

79. Pursuant to section 1129(a)(2) of the Bankruptcy Code, the Trustee has complied with the applicable provisions of title 11, including, specifically, sections 1125 and 1126 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Disclosure Statement Order governing notice, disclosure and solicitation in connection with the Plan, the Disclosure Statement, and all other matters considered by the Bankruptcy Court in connection with the Chapter 11 Cases.

80. On November 1, 2007, after due notice and a hearing, the Bankruptcy Court entered the Disclosure Statement Order, which, *inter alia,* approved the Disclosure Statement, finding that it contained "adequate information" within the meaning of section 1125 of the Bankruptcy Code and established procedures for the Debtors' solicitation of votes on the Plan.

81. In accordance with section 1125 of the Bankruptcy Code and pursuant to the Disclosure Statement Order, the Trustee solicited acceptances or rejections of the Plan from holders of all Claims and Equity Interests in each class of impaired Claims and impaired Equity Interests that are to receive distributions under the Plan. Classes 1A, 1B, 3A and 3B of the Plan are unimpaired. As a result, pursuant to section 1126(f) of the Bankruptcy Code, holders of Claims in those classes are conclusively presumed to have accepted the Plan. The Trustee has complied with the applicable provisions of section 1126 of the Bankruptcy Code.

**R. The Plan Complies with Section 1129(a)(3) of the Bankruptcy Code**

82. Having examined the totality of the circumstances surrounding the Plan, the Bankruptcy Court has determined that the Plan was proposed in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Plan achieves the goals of the Bankruptcy Code by liquidating the Debtors' assets and distributing the proceeds thereof pursuant to the priority scheme set forth under the Bankruptcy Code. The Plan

is the result of extensive discussions and debates between the Trustee and his advisors and is overwhelmingly supported by creditors, equity holders and other parties in interest in these Chapter 11 Cases. It is clear that the Plan promotes the objectives and purposes of the Bankruptcy Code.

**S.     The Plan Complies With Section 1129(a)(4) of the Bankruptcy Code**

83.     Section 1129(a)(4) of the Bankruptcy Code requires that certain professional fees and expenses paid by the plan proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, be subject to approval of the court as reasonable. Section 1129(a)(4) of the Bankruptcy Code has been construed to require that all payments of professional fees made from estate assets be subject to review and approval by the Bankruptcy Court as to their reasonableness. *See Heartland Fed Sav. & Loan Assoc.* v. *Briscoe Enters. Ltd, II (In re Briscoe Enters. Ltd, II),* 138 B.R. 795, 816-17 (N.D. Tex. 1992), *rev'd,* 994 F.2d at 1170 (court of appeals affirming bankruptcy court's ruling on payment of professional fees); *see also Mabey v. Sw. Elec Power Coop (In re Cajun Elec. Power Coop., Inc.),* 150 F.3d 503, 515 (5th Cir. 1998), *cert, denied,* 526 U.S. 1144 (1999); *see, e.g., In re Anderson Grain Corp.,* 222 B.R. 528 (Bankr. N.D. Tex. 1998).

84.     Section II(B)(1) of the Plan clearly provides that each Professional who holds or asserts a Fee Claim, or any other party in interest who asserts a claim under Section 330 or 503 of the Bankruptcy Code for compensation or reimbursement in the Chapter 11 Cases, incurred prior to the Effective Date, shall be required to file with the Bankruptcy Court and serve on all parties required to receive such notice, a Fee Application within forty-five (45) days after the Effective Date. Failure to file and serve such notice timely and properly results in the Fee Claim being forever barred and discharged. A Fee Claim in respect of which a Fee Application has been properly filed and served pursuant to Section II(B)(1) of the Plan shall become an Allowed

Fee Claim only to the extent allowed by Court Order.  The foregoing procedures for the Bankruptcy Court's review and ultimate determination of fees and expenses paid satisfy the objectives of section 1129(a)(4) of the Bankruptcy Code.  Further, the Court finds and concludes that the costs, fees (including attorneys' fees), and expenses of SunTrust and Bell County IDC are reasonable and should be paid as set forth in the SunTrust Settlement Agreement without application to or further order of this Court.

**T.     The Plan Complies With Section 1129(a)(5) of the Bankruptcy Code**

85.     Section 1129(a)(5) of the Bankruptcy Code requires that the plan proponent disclose the identity and affiliations of the proposed officers, directors or voting trustee of the debtors after confirmation of the plan; that the appointment or continuance of such officers, directors or voting trustee be consistent with the interests of creditors and equity interest holders and with public policy; and that there be disclosure of the identity and compensation of any insiders to be retained or employed by the reorganized debtors.  The Plan does not propose the appointment of any officer, director or voting trustee of the Debtors.  Moreover, the Plan does not propose the retention or employment of an insider of the Debtors.  Therefore, the provisions of section 1129(a)(5) of the Bankruptcy Code are inapplicable and thus satisfied.

**U.     The Plan Complies With Section 1129(a)(6) of the Bankruptcy Code**

86.     Section 1129(a)(6) of the Bankruptcy Code requires that any regulatory commission having jurisdiction over the rates charged by the reorganized debtor in the operation of its businesses approve any rate change provided for in the plan.  11 U.S.C. § 1129(a)(6).  The Trustee's Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.  Therefore, the provisions of section 1129(a)(6) of the Bankruptcy Code are inapplicable and thus satisfied.

**V.    The Plan Complies with Section 1129(a)(7) of the Bankruptcy Code**

87.    As set forth fully in the Trustee's liquidation analysis and by the evidence adduced in the Confirmation Hearings, the "best interests" test is satisfied as to all impaired classes of Claims and Equity Interests which have not accepted the Plan.    Furthermore, a liquidation under chapter 7 as set forth in the Liquidation Analysis would profoundly and adversely affect the ultimate proceeds available for distribution to all holders of Allowed Claims and Allowed Equity Interests in the Chapter 11 Cases.[5]  Moreover, the increased costs associated with a liquidation under chapter 7 would substantially reduce the proceeds available for distribution.    These costs would include, among other things, administrative fees and costs payable to a trustee in bankruptcy and professional advisors to such trustee.

88.    In the context of the erosion of the asset values and the increased costs and delay associated with the administration of a chapter 7 case, confirmation of the Plan provides each rejecting creditor and interest holder with a recovery that is not less than such holder would receive in a chapter 7 liquidation of the Debtors.

89.    Based upon the foregoing, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.    Therefore, the "best interests" test is satisfied with respect to each of these classes.

**W.    The Plan Complies with Sections 1129(a)(8) and (b)(1) of the Bankruptcy Code**

90.    Section 1129(a)(8) is satisfied with respect to the Claims in Classes 1A, 1B, 3A and 3B as such Claims are not impaired under the Plan and are conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.

---

[5]    The Bankruptcy Court here considers, inter alia. (1) the problems associated with the quick sale of assets as contemplated in chapter 7, including, (2) the limitations of section 721 of the Bankruptcy Code and (3) loss of value through passage of time.

91. Based on the Record, the following impaired Classes where votes were received have accepted the Plan: 2A, 4A, 4B, 5A, 5B, 5C, 6A.

92. Accordingly, other than certain classes of Claims and Equity Interests (each of which is subject to the cram down provisions of section 1129(b) of the Bankruptcy Code, as discussed below), section 1129(a)(8) of the Bankruptcy Code is satisfied.

**X.      The Plan Complies with Section 1129(a)(9) of the Bankruptcy Code**

93. Section 1129(a)(9) of the Bankruptcy Code requires that persons holding claims entitled to priority under section 507(a) of the Bankruptcy Code receive specified cash payments under the plan. *See* 11 U.S.C. § 1129(a)(9).

94. Consistent with section 1129(a)(9)(A), Section II(B)(1) of the Plan provides that each holder of an Allowed Administrative Claim shall be paid the amount of such holder's Allowed Administrative Claim in Cash on or before the Initial Distribution Date, or shall receive such other treatment as agreed upon in writing by the Trustee and such holder; provided, however, that an Administrative Claim representing a liability incurred in the ordinary course of business by the Debtors' Estates may be paid in the ordinary course of business by the Debtors' Estates.

95. Consistent with section 1129(a)(9)(A), Section II(B)(2) of the Plan provides that all Allowed Fee Claims shall be paid by the Trustee or Liquidating Trustee within ten (10) days after such Claim is Allowed by Court Order from the Debtor Bond Proceeds and Other Proceeds.

96. Consistent with section 1129(a)(9)(C) of the Bankruptcy Code, Section II(B)(2) of the Plan provides that each holder of an Allowed Priority Tax Claim shall receive the full amount of such holder's Allowed Claim in one Cash payment on or before the Initial Distribution Date.

97.    Based upon the foregoing, the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

**Y.    The Plan Complies with Section 1129(a)(10) of the Bankruptcy Code**

98.    For each of the Debtors, at least one class of impaired creditors accepted the Plan or, alternatively, where no votes were received for a specific Debtor, all of the classes of creditors for that particular Debtor were not impaired.

**Z.    The Plan Complies with Section 1129(a)(11) of the Bankruptcy Code**

99.    Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan. *See* 11 U.S.C. § 1129(a)(11). The Trustee's Plan proposes a liquidation of the Debtors' assets. Thus, the Trustee does not have to satisfy the feasibility test set forth in section 1129(a)(l1) of the Bankruptcy Code. Therefore, the Plan satisfies section 1129(a)(l1) of the Bankruptcy Code.

**AA.    The Plan Complies with Section 1129(a)(12) of the Bankruptcy Code**

100.    Section II(B)(4) of the Plan provides that the Trustee or Liquidating Trustee as the case may be, shall be responsible for timely payment of United States Trustee quarterly fees incurred pursuant to 28 U.S.C. §1930(a)(6). Any fees due as of the date of confirmation of the Plan will be paid in full on the Effective Date. After confirmation, the Trustee shall pay United States Trustee quarterly fees as they accrue until these cases are closed by the Court. The Plan accordingly satisfies section 1129(a)(12) of the Bankruptcy Code.

**BB.    The Plan Complies with Section 1129(a)(13) of the Bankruptcy Code**

101.    Section 1129(a)(13) of the Bankruptcy Code requires that the plan continue after its effective date all retiree benefits at the level established pursuant to subsection (e)(1)(B) or (g)

of section 1114 of Title 11, at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits. *See* 11 U.S.C. § 1129(a)(13). At no time prior to confirmation of the Plan, did the Debtors obligate themselves to provide retiree benefits. Accordingly, the Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

**CC. The Plan Complies with Section 1129(a)(14) of the Bankruptcy Code**

102. Section 1129(a)(14) of the Bankruptcy Code requires if the debtor is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the debtor must have paid all amounts payable under such order or such statute for such obligation that first become payable after the date of the filing of the petition. *See* 11 U.S.C. § 1129(a)(14). The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, the Plan satisfies the requirements of section 1129(a)(14) of the Bankruptcy Code.

**DD. The Plan Complies with Section 1129(a)(15) of the Bankruptcy Code**

103. Section 1129(a)(15) of the Bankruptcy Code requires that if the debtor is an individual, and the holder of an allowed unsecured claim has objected to confirmation of the plan, the property to be distributed to the holder must be not less than the value required by section 1129(a)(15). *See* 11 U.S.C. § 1129(a)(15). The Debtors are not individuals. Accordingly, the Plan satisfies the requirements of section 1129(a)(15) of the Bankruptcy Code.

**EE. The Plan Complies with Section 1129(a)(16) of the Bankruptcy Code**

104. Section 1129(a)(16) of the Bankruptcy Code requires that all transfers of property of the plan shall be made in accordance with any applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation of trust. *See* 11 U.S.C. § 1129(a)(16). All transfers of property under

the Plan will be made in accordance with any applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation of trust.  Accordingly, the Plan satisfies the requirements of section 1129(a)(16) of the Bankruptcy Code.

**FF.     The Plan Complies with Section 1129(b) of the Bankruptcy Code**

105.     Certain classes of Claims and Equity Interests did not vote to accept the Plan (or cast ballots rejecting the Plan).  Accordingly, such classes are subject to "cram down."  Under section 1129(b), the Bankruptcy Court may "cram down" a plan over a dissenting impaired class or classes of claims or interests so long as the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to the dissenting class or classes.  *See Sentry Operating,* 264 B.R.  at 862; *Landing Assocs.,* 157 B.R. at 821; *Eagle Bus,* 134 B.R. at 601.

106.     Section 1129(b)(2)(A) of the Bankruptcy Code defines the phrase "fair and equitable" as to holders of secured claims to include the following requirements: (a) each holder of a secured claim must retain the lien securing such claim to the extent of the allowed amount of such claim and must receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property or (b) the holder of such claim must receive the indubitable equivalent of such claim.  No ballots were cast by Creditors asserting claims in Class 5D and the Trustee is unaware of any creditors in that class.  This, without question, results in the holders of Secured Claims receiving property of a value, as of the Effective Date, equal to the amount of the Allowed Claim of any such holder of Secured Claims.

107.     Section 1129(b)(2)(B) of the Bankruptcy Code defines the phrase "fair and equitable" as to holders of unsecured claims to include the following requirements with respect to a class of Unsecured Claims: (a) the plan must either provide that each holder of a claim of

such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim or (b) the plan must provide that the holder of any claim or interest that is junior to the claims of such class receive or retain nothing under the Plan.  No ballots were counted by Creditors asserting Claims in Class 6B.  In the event there is an Allowed Class 6B Claim, the Holder of such Allowed Class 6B Claim shall receive a pro-rata share of the Sales Proceeds available for distribution to holders of Allowed Unsecured Claims.  This treatment assures that holders of Unsecured Claims will receive property of a value, as of the Effective Date, equal to such Unsecured Claims as required by section 1129(b)(2)(B) of the Bankruptcy Code.  Accordingly, the cram down of this class is appropriate.

108.    Section 1129(b)(2)(C) of the Bankruptcy Code defines the phrase "fair and equitable" as to holders of interests to include the following requirements with respect to a class of interests:  (a) the plan must either provide that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the allowed amount of such interest or (b) the plan must provide that the holder of any interest that is junior to the interests of such class receive or retain nothing under the Plan.  Holders of Equity Interests in Classes 8A and 8B voted to reject the Plan.  However, the Plan provides that the holders of Allowed Class 8A and 8B Equity Interests shall receive a distribution of the Sales Proceeds remaining after payment of all Allowed Claims pursuant to the Partnership Agreements.  This treatment assures that holders of Allowed Equity Interests will receive property of a value, as of the Effective Date, equal to such Allowed Equity Interests as required by section 1129(b)(2)(C) of the Bankruptcy Code.  Accordingly, the cram down of these classes is appropriate.

109.    The Court finds, based upon the SunTrust exhibits and all other evidence before the Court, that SunTrust has a valid, perfected secured claim against the Debtors and that all objections to such claims are hereby overruled in their entirety.

110.    To the extent that there is a conflict between the terms and conditions of the Confirmation Order and the Findings of Fact and Conclusions of Law herein, the terms and conditions of the Confirmation Order shall govern.

## SUMMARY

111.    The Plan meets the requirements of chapter 11 and should be confirmed.   An appropriate order will be entered.

### ### END OF ORDER ###

Submitted by:

John C. Leininger
Bracewell & Giuliani LLP
1445 Ross Avenue, suite 3800
Dallas, Texas 75202
Telephone: (214) 758-1043 Telephone
Facsimile: (214) 758-8343 Facsimile
Email: John.Leininger@bgllp.com